Vidal v. Advanced Care Staffing, 23303. May it please the court. My name is David Kelly of O'Melven and Meyer. I represent the defendant appellant, Advanced Care Staffing, in this appeal. The issue here is whether the arbitration provision of Vidal's contract with Advanced Care contains a clear and unmistakable delegation clause. The district court clearly erred in finding that it did not and improperly enjoyed the arbitration from going forward. So I'd like to make four or address four points. Well, let me stop you. This is a question of a preliminary injunction or a stay. So isn't the question for us whether there is irreparable harm more to one side than to the other and a serious issue about the delegation clause. That is, we are not here to decide the ultimate merits, which is what you just posed as to whether the delegation clause does what you say it did. If there is a serious issue as to whether the delegation clause does that, and the irreparable harm is in the favor, strongly in favor of opposing client, then we uphold the stay. We uphold this. So it's a preliminary injunction, Your Honor. We're not talking here about a stay. We're talking about a preliminary injunction. And so the issue is whether or not there's any serious harm. And in this issue, the serious harm would be, would it be serious harm for this thing to go to an arbitration that they clearly and unmistakably agreed to enter into? Well, that's what you say. The question of whether it's clear and unmistakable. But because of course, the merits also matter. The trial judge found against you on that. But let's for a moment put that to one side. My question is, under our Maryland case, which the Supreme Court has undercut as a per se notion, but which we have continued to apply in terms of particular cases. Isn't this a case where there is certainly very serious harm if this person is made to go to arbitration? And then we leave the merits to another time. So under your analysis, Judge, the serious harm would be addressed to whether or not there's serious harm in giving issues of arbitrability to an arbitrator. And the district court found that the issue of serious harm was essentially the expense of going through arbitration. No court has found that that is serious harm that would require a preliminary injunction here. In the particular cases of people like this one is the question. Well Judge, here there is no difference really. I mean, there's expense in going through litigation, there's expense in going through arbitration. And I don't think it reasonably can be said that going into arbitration is a serious harm and letting the arbitrator make determinations of arbitrability. And mostly what this court decided, the district court decided, concerning issues that went to the merits, that went to the serious harm, were issues of enforceability. And issues of enforceability typically, as given in Rent-a-Center, are issues that should go in the first instance to the arbitrator. And that's where the district court made an error here, and that's why it should be sent back. If the, I mean, from the district court's point of view, if the delegation clause is clear and ambiguous and so on, and then there's the issue of a blue pencil, and the issues of the things that your client dropped, but which could be brought back, and so on. So, of course, the district court went on these other things, but that was still staying on the narrower ground. So, our point, Judge, I think is that the delegation clause is clear and unmistakable. And the district court kind of turned its back on some of the precedents, starting with Rent-a-Center, and in this court, a regal reblue fish, and did not find that it was clear and unmistakable. We think it clearly is. Secondly- But that can be overridden, in other words- Yes, under DDK, it can be underwritten if- So that's the focus. If there's some sort of ambiguity. And if you look at Schedule B in the arbitration- Well, no, no. So when you say there's some sort of ambiguity, let's say that the provision, delegation provision, is clear and unmistakable, it just delegates to an arbitrator. But there are certain circumstances, as I understand it, Third, Sixth, and Provided very useful guidance in this area, certain circumstances where that can be overridden. If, for example- Well, the case is where I think Judge Morrison was going, maybe not directly. If, for example, there is a right, a federal right, and this is the Department of Labor's amicus brief, that because of the prohibitive expense, or for some other reason, cannot be vindicated by the arbitration clause. Well, two things, Your Honor. First, with regard to the Ninth Circuit, I'm familiar with some of the Ninth Circuit cases that discuss kind of an overriding it. Those cases, number one, the rulings in those cases, I don't think those are the holdings, number one. And number two, they do not address, curiously, the impact of rent dissenter. But nonetheless, Judge, there is nothing in this case that has been alleged that is not something that's subject to arbitrability. For example, the TVPA claims, that is something that can be subject to arbitrability. Congress has been very thoughtful about what issues to exclude from arbitration under the Federal Arbitration Act. And none of those- The declaratory judgment action here is, in part at least, about the FLSA, correct? Those claims were also subject to arbitration. And there is, so I think, Judge, that anything relating to the FLSA is not relevant to the issue here, which should be the focus on the delegation clause. Because once you focus on whether or not the delegation clause is clear and unmistakable, and that you don't have the type of ambiguity as you had in DDK, which you don't have here, then it goes to the arbitrator. And the arbitrator can make decisions relating to the FLSA, or to, for example, the TVPA. And by the way, the Vidal in this case made no claim about human traffic. Let me give you a hypothetical in the title seven. I don't like hypotheticals. It's just a hypothetical, it's not this case. Let's put it in the title seven context, and there's an arbitration clause that says you must arbitrate your title seven, any title seven claim of discrimination or retaliation, and no matter what, you've got to pay for that. And it's clear and unmistakable delegation provision that says everything about arbitration needs to go to the arbitrator. Is that not a, at least a, is there not a serious question that might be grounds for a PI as to the enforceability of that provision? Well, I think not, your honor, because again, that's an issue that can be decided by the arbitrator. Well, it could be, but the question is, is there a serious issue whether that is something that is to be decided? I mean, of course, the arbitrator is capable of deciding anything. The question is, is there a serious issue, whether under those circumstances in this hypothetical. I think, your honor, that- The government says that is a serious, the government says it's more than a serious issue. Judge, when you have a series of cases as you do in this circuit, Ragon, for example, that addresses that very issue, I think that doesn't present a serious issue. I think the question then becomes, again, is something that can go back to the arbitrator. Because I think to go along with this preliminary injunction is to really emasculate the FAA. And is to turn your back on the cases that make it very clear that each judge on this panel has talked about, in other cases, about how important it is to abide the clear intent of the parties to arbitrate. And when you have a clear and unmistakable delegation of arbitrability, then it should, that these issues that we're talking about- Does the fact that your client could make some changes through the blue pencil and had made some changes make the delegation clause absolute and total and unmistakable? I don't think there's anything that one reasonably could argue in this case that the delegation clause in schedule B is not clear and unmistakable. But you're not answering my question. My question goes to the fact that your client could make some changes which would affect the delegation. What the delegation clause did, is that enough to make it not? I'm not sure I understand, Your Honor, but there were no changes in this record. There were no changes that were made to the delegation clause that is the subject of this appeal. But that they could be made, does that make that delegation clause an issue sufficiently serious so that- I think the answer is no, because that is not this case. And we did not have, there was not a change, the arbitration clause was quite clear and it hadn't changed. If you conjure up some sort of hypothetical, which I'll try to avoid. But if somebody had gone and changed it and made it so it was not clear and not unmistakable, that's a different issue. But that is not this case. Your argument, your view is that it's a savings clause that doesn't really change the- The savings clause, again, the savings clause is unrelated to the delegation clause, number one, judge. And two, all the issues that were discussed in the district court concerning the delegation clause were really issues that speak to enforceability. And these are issues that you need a substantial and direct tie between things such as the savings clause and the delegation clause. Such as in the cases where you have fraudulent inducement of a contract. You need to have a substantial and direct connection to the delegation clause. As a rent-a-center, you can talk about the whole agreement being inappropriate, but if the delegation clause is clear and unmistakable, then it goes to the arbitrator. Just one more question, at least for my part. Would you agree that a fee-splitting provision, as was, I think it's existed in the Greentree case, is not particularly different from the looser pays provision? First up, I think it would really depend on the structuring of that. But again, I think, Judge, that issue really speaks to damages. Damages speak to issues of enforceability. And those are issues that would don't go directly to the delegation clause on our issues. In the first instance, that should go to the arbitrator for arbitration. All right, thank you. You've reserved some time for rebuttal. And we'll hear from your friend on the other side. Good afternoon, your honors. My name is Hugh Barron from Kekalik Law, representing plaintiff and the faculty, Enzor Shem Vidal. The only question in this appeal, as your honors correctly observed, is whether the district court abused its discretion in issuing a preliminary injunction temporarily pausing the arbitration that ACS filed against Mr. Vidal. So that the district court could decide in the first instance, his claims concerning the enforceability of the arbitration provision. Let me ask you about that. So this is a preliminary injunction, right? Yes. And you just noted the standard of review is abuse of discretion. Assume for the argument that you prevail here. Where do we go from there? Where does this case go after that? It is, quote, only a preliminary injunction, unquote. Presumably, the court has an opportunity to have a full trial on the merits. Is that right? Yes, your honor. And just to be clear about the posture of this, Mr. Vidal filed a declaratory judgment action in the district court. The district court, in its opinion, stated in footnotes four and that needs to be had concerning Mr. Vidal's work conditions and his complaints about those conditions. The facts and circumstances surrounding the signing of the 2022 contract, including whether there was economic duress or procedural unconscionability. There's also discovery that could be had concerning Mr. Vidal's financial circumstances today, namely the question of whether he is actually able to pay tens of thousands of dollars. This is in connection with the vindication of rights issue. Yes. How does that go to the delegation clause? Well, so there are two issues, your honor. First is the delegation issue. And as the district court found, there was not a clear and unmistakable delegation here. Or Mr. Vidal had at least raised serious questions about that. Because of this, what ACS calls a savings clause, we call a judicial review of provision, which provides that only a court can- Can apply. But if this goes to the kind of trial that Judge Cabranes says, isn't the first thing that the district court must do is to ask whether there is a serious question, how the question with respect to the delegation clause comes out. Because if the delegation clause there comes out to be clearly and the issue is going to be decided by the arbitrator, even though the underlying contract may be terrible as all get out. So the question is, at that trial, which they've said, are there issues to be tested with respect to the delegation clause? And the government makes some suggestions. There are some suggestions with respect to how clear it is in general. And there are questions about whether, in fact, a delegation clause in a situation like this can be effective. But the argument that somehow, because the contract is a bad one, the delegation clause is a bad one, which pervades much of what is going on, is not the greatest argument in the world. But go ahead, answer that question. Yes, so first- Why don't you tell us what the question was? That's your first test. Okay. So, Your Honor, this court held in Gingras v. Think Finance that an attack on a delegation clause is enough to make the issue of enforceability one for the court. So that means that even if this court or the district court upon remand concludes that there was a clear and unmistakable delegation, you can still find, and the district court can still find on remand, that this provision, that the delegation provision is unenforceable. And she can do that for the same reasons that the arbitration provision is unenforceable. Let's take an example. Let's say that the arbitration provision contained a delegation clause that said that all disputes would be decided by the ACS CEO's mom's mother, right? That she was going to decide whether this clause was enforceable. Well, the attack that we would have on that, that she's an unfairly biased arbitrator, is the same both for the issue of delegation and for the arbitration clause as a whole. Just because something is true of the clause as a whole doesn't mean it's not true of the delegation clause as well. And Rent-A-Center expressly recognized that, but it said that you have to make the specific attack first on the delegation clause to make the issue of enforceability one for the court. Now, Mr. Brown, let me go back a bit. I am a former district judge, so I'm kind of simplistic. I don't jump to theories very quickly. Let's look at page 51 of Judge Morrison's opinion. At the decree of the language, it says, Conclusion, for the foregoing reasons, Vidal's motion for a preliminary injunction is granted. The arbitration shall be paused while the parties litigate the merits of Vidal's claims in this court, correct? Yes. So we have a preliminary injunction. I'm just imagining that you prevail here. And this goes back to Judge Morrison. What is it that she still has to do upon remand? So she would have to allow for some limited discovery into procedural unconscionability and also substantive unconscionability because New York law requires an individualized inquiry into ability to pay. And defendants would be able to get discovery during that as well as plaintiffs. In addition, though, the district court would have to reach several substantive issues that she didn't reach in her initial opinion, for example, whether the delegation clause and the arbitration provision violate the FLSA, the New York labor law, New York state trafficking law, as well as whether ACS's actions were, as far as we contend, a threatened abuse of legal process under the TVPA. If she finds that Mr. Vidal's ability to pay is not impaired, so it doesn't impair his ability to proceed with the FLSA, then what? Why isn't that the end of the inquiry? Because Mr. Vidal also has claims that the arbitration provision and the delegation clause violate his rights under the TVPA and under New York state unconscionability law. And just to be clear about this, we don't enforce contracts for illegal purposes. That's black letter law in New York, whether they're arbitration contracts or any other kind of contract. If this was, in fact, a contract for an illegal purpose, as Mr. Vidal contends, which was to force him to continue working against his will and was, in fact, intended for that purpose. Remember what happened here. After Mr. Vidal gave his notice of resignation, ACS specifically threatened him with the enforcement of this arbitration provision, including the delegation provision, if he followed through with his stated intent to quit his job. They specifically said if he didn't return to work, they would bring an arbitration against him, and he would owe ACS their attorney's fees and costs incurred in the arbitration and need to reimburse them for all reasonable costs. Let me ask you the following question then. So assume that we want to give you a little bit of a hypothetical. Just assume that we agree that the delegation clause was clear and unmistakable, and then also assume that we or that Judge Morrison determines that he can – he's able to afford the arbitration costs, just for a vote. Can an arbitrator decide all of the remaining issues that you've just listed? Is that not within the purview of an arbitrator to do? If she's already determined that there is no delegation clause and that the agreement is enforceable under the FLSA, the TVPA. Those are the two things that I'm sort of focused on. So assume those two things. What else is there to do that an arbitrator can't do? That's my question. So the issue is that – and the district court addressed this in its opinion. If Mr. Vidal is required to go forward in this arbitration, he is effectively precluded by the loser pays provision from mounting full-throated defense to ACS's breach of contract action. Let's say he's a multimillionaire. Because you're actually indicating that it's not a pure legal issue. There is some factual element to this that we've got – that Judge Morrison is now on remand. Let's say we remand, right? She would then be tasked with determining as a matter of discovery or otherwise whether in fact he is able to effectively vindicate his rights under the FLSA and the other statute, right? Right. So let's say that she determines that. Then why isn't everything else a matter for the arbitrator to decide? You're saying she's only determined the FLSA, not the unconscionability or the TVPA claims? Is that right? Well, I think that those are all tied together. Yes, well, what we're saying is that Mr. Vidal should have the opportunity to present those claims to her and let her decide that because he's never agreed – and this goes back to the delegation issue – he has never agreed to an arbitration of enforceability issues. The arbitration clause says, and this is on page 250 of the appendix, I agree that in the event of any competent court – court of competent jurisdiction shall determine that any portion of this provision exceeds the scope permitted by applicable law, the court shall have the authority to modify or blue pencil such portion to render it enforceable. And if a court determines that a legal dispute shall not be resolved by arbitration for any reason, the dispute or claim shall be decided by a judge without a jury. So again, the arbitration provision – and this is why it is not clear and unmistakable – expressly authorizes a court and only a court to decide these issues of enforceability. You're saying that the arbitration that the delegation clause is not absolute because of this court's power, or at least that that's a serious enough issue so that if all the other things go, that may be enough. And what is it that at the trial would we find about that? Would we find what that means if that makes the arbitration clause – absolute or not? Is that the first thing that would happen at the trial that Judge Cabranes proposed? Well, I think the first thing that would happen is there would be motions for summary judgment on the question of whether there's a clear and unmistakable delegation clause. That would look at all the facts here, including the fact that there is nothing clearly identified as a delegation clause that many courts have found, and Judge Morrison recognized this, that even when there are more clearly drafted delegation clauses – the first thing that would happen if we said, if we affirmed, is that Judge Morrison would look to whether the arbitration clause on these terms with all the facts was clear and unmistakable. Yes. And that's something that that judge can do separately from whatever happens after. Yes, provided that the preliminary injunction remains in place. And, again, remember why we are here in the first place. ACS filed the arbitration against Mr. Vidal. That's very different than the circumstances this court usually sees in arbitration-related cases. And it did so because it was punishing him for leaving his job and with the express intent of extracting attorney's fees and costs. Thank you very much. Thank you. Just briefly, if I may, Your Honor, I think that all of the issues that he, Mr. Barron, is suggesting should go back to the district court are exactly the very issues that speak to enforceability and should go to the arbitration. You're basically tossing the Arbitration Act aside and putting this in front of the district court when everything in this arbitration agreement speaks of the party's clear intent to arbitrate any dispute. And, for example, the Blue Pencil Clause is completely and wholly separate from the Arbitration Clause. The Arbitration Clause is very clear about the claims. It doesn't bear the ambiguity such as DDK Hotels does. Do you know if these Blue Pencil Clauses, I'm just asking you because I don't know the answer,  I think they routinely appear, Judge. And moreover, in this particular case, trying to anticipate changes in the law. So under the Federal Arbitration Act, there has been from time to time where Congress has, for example, included claims or excluded claims that could be subject to arbitration. So anticipation of that. But why isn't that precisely what, if we assume that the harm is more one way than the other for the moment, if we assume that, why isn't that precisely what you're just arguing now? That merits, which in Judge Cabranes' presumed trial, the district court would do first? I think if you went that route... What's so bad about having the district court look and see whether Blue Pencil Clauses are common? Whether Blue Pencil Clauses are common in situations like this? That is, finding what you have told us is so, but which, frankly, I don't know. Well, Your Honor, going through the arbitration agreement, I mean, it just exudes an intent to arbitrate claims. I think if you were to read the Blue Pencil Clause in the way they suggest it should be read, you're rendering the whole arbitration agreement completely superfluous and subject to the ability of a court to do exactly what the FAA and courts interpreting it say you shouldn't do, which is to have any hostility to arbitration, and that you should abide the contract and to follow the presumption of arbitrability. Thank you. I'm trying to understand the status of this case from your perspective. I would think, I'm not trying to put words in your mouth, but let me characterize the situation. You can put words in my mouth, Judge. A preliminary injunction on appeal, it's more or less a layup, if I may say so, procedurally. Abuse of discretion being a very broad standard, and we have 51 pages of decision. What really is left if you lose here? Well, a couple of things, Judge. First, to bring some clarity to the record. I mean, haven't you in fact lost this case if we affirm? Well, I think the answer is yes, we do. Because all the benefits that a party has to go into arbitration, the expense of becoming the target for litigation just completely blows up on us. And there's a presumption of arbitrability. There's a reason why, particularly in employee-employer contracts, you have arbitration provisions to avoid the type of litigation. And what he's talking about is sending us back to the district court and engage in litigation, and then maybe have to go back to the arbitration. I appreciate that, that you lose a lot of the benefits of the arbitration agreement. But I'm focused on this Department of Labor brief. The one where they ask you to make an advisory opinion? Well, the one where they ask you to think about certain issues. And what if the only issue that was left for Judge Morrison was this discovery issue relating to his ability or inability to pay? Then, you know, you might lose some benefit, but if she's not able to pay, then that might have an effect on some component that can go to arbitration. I don't know if that helps. Let me say a couple of things. One is, you know, look, there's an atypical number of amici briefs that have been filed in this case, none of which we think really speak to the issues on appeal. That's not to suggest that they're not important policy issues, but the fact of the matter is that the FLSA claim is one that typically and can be handled by the arbitrator to determine whether or not that any sort of damage that were sought, including any fees, would violate the FLSA. And that is something that can and has been and should be handled in arbitration. Yes, Your Honor. Counsel, you said before that if we did, if we affirm, we would be undercutting arbitration generally. Isn't that argument appropriate? The same argument can be made any time one challenges the delegation clause. That is, here there is a challenge to the delegation clause. The district court found that that's serious enough. They talked about all sorts of other things as well. But if the question is that, that question does not undercut arbitration generally. It goes to saying if there is a serious enough issue and the harm is in one direction rather than another, then it's up to the district court in the first instance to find whether that clause is in fact total, complete, or is not. So Judge Ashley, in this particular case, the defendant did not make a claim specifically to the delegation clause. Not the defendant. The plaintiff did not make a claim specifically to the delegation clause, as is required by a Supreme Court precedent in Rent-a-Center, for example. What the judge did was to conjure up that this was his general claim to the arbitration agreement was also a challenge to the delegation clause specifically, but it was not. And when you look at the claims that were made against the- So now your claim is that he didn't challenge the delegation clause. Not as required by Rent-a-Center, no. Well, then they now say they did, and the district court found that there was such a challenge. So you're asking us to say that the district court was clearly wrong in listening to his argument as if it was a challenge to the delegation clause. I don't think the court- I wouldn't say the court- I think the court should have listened to it, but whether or not she should have conjured up their claim generally to a specific allegation against the unmistakability ambiguity of the arbitration clause was wrong. I think it was an overreach. Okay, thank you. Thank you very much. Thank you. A very helpful argument on both sides, and we'll reserve the decision.